UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------x
THOMAS RILEY,                                  :
                            Plaintiff,          :
                                               :                 **OPINION AND ORDER**
v.                                             :
                                               :                 16 CV 2227 (VB)
A. ROYCROFT RN#421, J.B. WILSON NA, T.         :
KITAYCHIK RN, D. HINTON RN, R.F.               :
CUNNINGHAM, Facility Superintendent,           :
                            Defendants.         :
---------------------------------------------------------------x

Briccetti, J.:

       Plaintiff Thomas Riley, proceeding pro se and in forma pauperis, brings this action under

42 U.S.C. § 1983, alleging that while incarcerated at Woodbourne Correctional Facility

("Woodbourne"), defendants A. Roycroft, J. Barrett-Wilson, T. Kitaychik, D. Hinton[1]

(collectively, the "Nurse Defendants"), and Superintendent R.F. Cunningham violated plaintiff's

constitutional rights by failing to provide him with adequate medical care and by transferring

him to another facility.

       Now pending is defendants' motion to dismiss the complaint pursuant to Rule 12(b)(6).

(Doc # 18).

       For the reasons set forth below, the motion is GRANTED.

       This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331.

## BACKGROUND

       For purposes of ruling on a motion to dismiss, the Court accepts all factual allegations of

the complaint as true, and draws all reasonable inferences in plaintiff's favor.

---

[1]      In his opposition brief, plaintiff voluntarily withdrew his claims against Hinton.  Those
claims are accordingly dismissed.

On January 2, 2014, plaintiff arrived at Woodbourne after having been transferred there from Marcy Correctional Facility by bus over the course of a two-day journey.  Plaintiff alleges the two-day bus ride in inclement weather caused him to suffer severe pain related to major back surgery he underwent in 2011.  Plaintiff further alleges that during his stay at Woodbourne, from January 7 to January 24, there were snow storms, rain, and very cold weather that also caused him to suffer severe pain.  (Compl. at 3).

On January 2, 2014, plaintiff was seen by Nurse Roycroft.  Plaintiff alleges he requested the pain medication Ultram and explained that he previously had "major back surgery, where part of his spinal column was removed and replaced with a rod," and a subsequent lower back surgery to correct nerve damage.  (Compl. at 3).  An "Ambulatory Health Record" dated January 2, 2014, and attached as Exhibit 1 to the complaint, documents that plaintiff "request[ed] Motrin for pain" and that a previous prescription for Ultram had been discontinued.  (Id. Ex. 1).  In his opposition brief, plaintiff admits he "accepted the offer of 'Motrin'" until his prescription of Ultram was renewed.  (Pl.'s Opp'n at 9).  The January 2, 2014, medical record also notes under "MD Orders," signed on January 7, 2014, by "G. Switz, PA,"[2] that plaintiff was approved for medical permits for no stairs, lifting or sports participation; a cane/walker; a wheelchair; a lower bunk; a wheelchair cushion; and a double mattress.  Plaintiff was also prescribed seven other medications.

---

[2]     In his opposition brief, plaintiff states he "was unable to identify" G. Switz "at the drafting of the original complaint" and requests to amend the complaint to add G. Switz.  (Pl.'s Opp'n at 10).  Similarly, plaintiff seeks to amend the complaint to add an unidentified nurse defendant whom he saw at sick call on January 10, 2014.  (Id. at 12).  Because the Court finds that repleading would be futile because the problems with plaintiff's claims are substantive, as discussed below, the Court declines to grant plaintiff leave to amend the complaint to add G. Switz or the unidentified nurse as defendants.

On January 7, 2014, plaintiff alleges he was seen by Nurse Roycroft and NA Barrett-Wilson and "again explained his [m]edical [c]onditions and that he had been previously treated with the pain medication" Ultram.  (Compl. at 3).  Plaintiff claims Roycroft and Barrett-Wilson "fail[ed] to provide him with any [m]edical [p]rovisions" and initiated a facility transfer for plaintiff.  (Id.).  However, two different entries on plaintiff's January 7, 2014 medical record, attached as Exhibit 3 to the complaint, indicate he was using a cane, had been using a wheelchair, and that he had refused physical therapy sessions.  Another note on plaintiff's January 7, 2014 medical record states, "chart to MD for restriction review."  The second of the three entries on plaintiff's January 7, 2014 medical record includes a note that reads, "unsuitable for WCF [Woodbourne] placement."  (Id. Ex. 3).  The third entry states, "Per PA [physician assistant] UTR [transfer] requested for a flat facility."  (Id.).

Plaintiff claims on January 10, 2014, he was seen again at sick call and he again requested "pain medication or the medical devices provided to him" for pain relief by the New York State Department of Corrections and Community Supervision ("DOCCS") medical personnel.  (Compl. at 3).  Plaintiff's January 10, 2014 medical record, attached to the complaint as Exhibit 4, states, "Requesting neck brace . . . [H]ad fusion in neck[,] no longer needed."  (Id. Ex. 4).  There is no indication in the January 10, 2014 record that plaintiff requested pain medication on that day.

Plaintiff's medical record dated January 14, 2014, indicates plaintiff would be transferred to Franklin Correctional Facility ("Franklin") on January 21, 2014, and lists six medications ordered by the provider for plaintiff.  (Compl. Ex. 4).  Plaintiff's medical record dated January 15, 2014, notes plaintiff's request for Ultram, a chair cushion, and a neck brace permit, which were apparently all denied.  The record includes a note stating, "No indication.  No.  Cervical

fusion few yrs ago." (Id.).  The January 15, 2014, medical record also indicates plaintiff was given ibuprofen.  In his opposition brief, plaintiff acknowledges he received ibuprofen, but claims it was not effective.  (Pl.'s Opp'n at 18).

On January 21, 2014, plaintiff was seen at sick call by Nurse Hinton.  Plaintiff claims Nurse Hinton "neglected to provide [him] with any medical care."  (Compl. at 3).  However, plaintiff's medical record from that date provides, "[Complains of] pain in legs and body[,] tingling in toes[, history] of spinal surgery, metal rod in back[,] fusion of upper spine.  [Inmate] has Motrin, advised him to continue taking it.  Chart to [nurse practitioner] for review."  (Id. Ex. 5).  The record appears to have been signed by Nurse Hinton.

On January 20, 2014, plaintiff filed a grievance regarding the allegedly inadequate medical care he received at Woodbourne.  (Compl. Ex. 6).

On January 24, 2014, plaintiff was transferred from Woodbourne to Franklin.  At Franklin, plaintiff received Ultram (Compl. at 4, Ex. 8), as well as the neck brace and chair cushion he had previously been requesting at Woodbourne (Id. Ex. 6 at 5, Ex. 8).

On February 11, 2014, Superintendent Cunningham denied an appeal of plaintiff's grievance as moot because plaintiff had been transferred from Woodbourne by the time of Cunningham's decision.

Plaintiff brings suit under 42 U.S.C. § 1983 against the Nurse Defendants and Cunningham, alleging the denial of adequate medical care violated his Eighth Amendment rights and that his transfer from Woodbourne violated his rights under the Equal Protection Clause of the Fourteenth Amendment.

**DISCUSSION**

I.   <u>Standard of Review</u>

In deciding a Rule 12(b)(6) motion, the Court evaluates the sufficiency of the operative complaint under the "two-pronged approach" articulated by the Supreme Court in <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 679 (2009).  First, plaintiff's legal conclusions and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not entitled to the assumption of truth and are thus not sufficient to withstand a motion to dismiss.  <u>Id</u>. at 678; <u>Hayden v. Paterson</u>, 594 F.3d 150, 161 (2d Cir. 2010).  Second, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 679.

To survive a Rule 12(b)(6) motion, the allegations in the complaint must meet a standard of "plausibility."  <u>Id</u>. at 678; <u>Bell Atl. Corp. v. Twombly</u>, 550 U.S. 544, 564 (2007).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  <u>Ashcroft v. Iqbal</u>, 556 U.S. at 678.  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully."  <u>Id</u>.

The Court must liberally construe submissions of <u>pro se</u> litigants, and interpret them "to raise the strongest arguments that they <u>suggest</u>."  <u>Triestman v. Fed. Bureau of Prisons</u>, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (internal quotation marks and citation omitted).  Applying the pleading rules permissively is particularly appropriate when, as here, a <u>pro se</u> plaintiff alleges civil rights violations.  <u>See Sealed Plaintiff v. Sealed Defendant</u>, 537 F.3d 185, 191 (2d Cir. 2008).  "Even in a <u>pro se</u> case, however . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  <u>Chavis v. Chappius</u>, 618 F.3d

162, 170 (2d Cir. 2010) (internal quotation marks and citation omitted).  Nor may the Court "invent factual allegations" plaintiff has not pleaded.  Id.

II.    Section 1983 Claims

"To state a claim under § 1983, a plaintiff must allege (1) the deprivation of a right secured by the Constitution or laws of the United States (2) which has taken place under color of state law."  Rodriguez v. Weprin, 116 F.3d 62, 65 (2d Cir. 1997).  Plaintiff must also allege defendants' personal involvement in the claimed violation of plaintiff's rights.  Provost v. City of Newburgh, 262 F.3d 146, 154 (2d Cir. 2001).  In other words, a plaintiff bringing a Section 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Ashcroft v. Iqbal, 556 U.S. at 676.

A.    Superintendent Cunningham

The "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983."  Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 135 (2d Cir. 2013).  Furthermore, a defendant may not be held liable under Section 1983 solely because that person employs or supervises a person who violated the plaintiff's rights.  See Ashcroft v. Iqbal, 556 U.S. at 676 ("Government officials may not be held liable for the unconstitutional conduct of their subordinates under a theory of respondeat superior."); Poe v. Leonard, 282 F.3d 123, 140 (2d Cir. 2002) ("A supervisor may not be held liable under section 1983 merely because his subordinate committed a constitutional tort.").  Thus, a plaintiff bringing a Section 1983 claim "must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  Id.

A supervisor's personal involvement in an alleged constitutional violation may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

Colon v. Coughlin, 58 F.3d 865, 873 (2d Cir. 1995).[3]

Plaintiff, however, does not allege any facts demonstrating how Superintendent Cunningham was personally involved in the alleged constitutional violations. That Superintendent Cunningham "affirmed the denial of plaintiff's grievance . . . is insufficient to establish personal involvement." Joyner v. Greiner, 195 F. Supp. 2d 500, 506 (S.D.N.Y. 2002). Moreover, "an alleged constitutional violation complained of in a grievance must be 'ongoing' in order to find personal involvement such that the 'supervisory official who reviews the grievance can remedy it directly.'" Burton v. Lynch, 664 F. Supp. 2d 349, 363 (S.D.N.Y. 2009) (quoting Vega v. Artus, 610 F. Supp. 2d 185, 198 (N.D.N.Y. 2009); see also Rahman v. Fisher, 607 F. Supp. 2d 580, 585 (S.D.N.Y. 2009) ("Receiving post hoc notice does not constitute personal involvement . . . . a supervisor may be liable for her failure to remedy a violation only in those circumstances where the violation is ongoing and the defendant has an opportunity to stop the violation after being informed of it.").

Here, plaintiff had been transferred to another facility by the time his grievance appeal came to Cunningham's attention and thus Cunningham did not have the opportunity to take any action to address plaintiff's claims. See Zappulla v. Annucci, No. 11-CV-6733, 2015 WL

---

[3]      After Ashcroft v. Iqbal, however, district courts within this Circuit have been divided as to whether claims alleging personal involvement under the second, fourth, and fifth of these factors remain viable. See Marom v. City of N.Y. 2016 WL 916424, at *15 (S.D.N.Y. Mar. 7, 2016) (collecting cases). The Second Circuit has yet to resolve this dispute. Id.

925928, at *5 (S.D.N.Y. Mar. 4, 2015),[4] vacated on other grounds, 636 F. App'x 824 (2d Cir. 2016) (summary order) ("by the time [the superintendent] was informed of Plaintiff's grievance, [the superintendent] no longer had the power to remedy any issues with Plaintiff's medical care, as Plaintiff was no longer in Green Haven's custody"); Burton v. Lynch, 664 F. Supp. 2d 349, 363 (S.D.N.Y. 2009) (once plaintiff was transferred to another facility, the defendant superintendent "no longer had the authority to grant Plaintiff's requests for additional medical attention").

Furthermore, plaintiff does not allege facts showing how defendant Cunningham, in his role as superintendent, was involved in creating, or continuing, a policy that caused or contributed to plaintiff's alleged constitutional deprivations.  Plaintiff merely claims Cunningham "fail[ed] . . . to correct the medical neglect in his [f]acility or to have his [m]edical staff properly trained to provide adequate medical care."  (Compl. at 4).  Plaintiff's threadbare and conclusory allegations are insufficient to defeat a motion to dismiss.  See Ashcroft v. Iqbal, 556 U.S. at 678 ("threadbare recitals of a cause of action's elements, supported by mere conclusory statements" do not defeat a motion to dismiss); see also Pettus v. Morgenthau, 554 F.3d 293, 300 (2d Cir. 2009) (affirming the dismissal of a failure-to-supervise claim because the complaint "lacks any hint that [DOCCS Commissioner] Goord acted with deliberate indifference to the possibility that his subordinates would violate [plaintiff's] constitutional rights").

Accordingly, plaintiff's claims against defendant Cunningham are dismissed.

---

[4]      Plaintiff will be provided with copies of all unpublished opinions cited in this decision. See Lebron v. Sanders, 557 F.3d 76, 79 (2d Cir. 2009).

B.    Inadequate Medical Care Claims

Plaintiff alleges violations of the Eighth Amendment's ban on cruel and unusual

punishment based on the Nurse Defendants' failure to provide him with the pain medication

Ultram or a neck brace.

To assert a claim for constitutionally inadequate medical care, plaintiff must allege "acts

or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs."

Estelle v. Gamble, 429 U.S. 97, 106 (1976).  This test has both an objective and a subjective

component:  plaintiff must plead facts showing (i) the alleged deprivation of medical care is

"sufficiently serious," and (ii) the officials in question acted with a "sufficiently culpable state of

mind."  Salahuddin v. Goord, 467 F.3d 263, 279–80 (2d Cir. 2006).

The objective component has two subparts.  "The first inquiry is whether the prisoner

was actually deprived of adequate medical care," keeping in mind that only "reasonable care" is

required.  Salahuddin v. Goord, 467 F.3d at 279 (citing Farmer v. Brennan, 511 U.S. 825, 839–

40 (1970)).  "Second, the objective test asks whether the inadequacy in medical care is

sufficiently serious" by examining "how the offending conduct is inadequate and what harm, if

any, the inadequacy has caused or will likely cause the prisoner."  Salahuddin v. Goord, 467 F.3d

at 280 (citing Helling v. McKinney, 509 U.S. 25, 32–33 (1993)).

In determining whether an alleged injury is a "serious" medical condition, "factors that

have been considered include [t]he existence of an injury that a reasonable doctor or patient

would find important and worthy of comment or treatment; the presence of a medical condition

that significantly affects an individual's daily activities; or the existence of chronic and

substantial pain."  Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (internal quotation

marks and citation omitted).  In cases challenging the adequacy of the medical treatment that was

given, "the seriousness inquiry is narrower.  For example, if the prisoner is receiving on-going treatment and the offending conduct is an unreasonable delay or interruption in that treatment, the seriousness inquiry 'focuses on the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'"  Salahuddin v. Goord, 467 F.3d at 280 (quoting Smith v. Carpenter, 316 F.3d 178, 185 (2d Cir. 2003)).

The subjective component requires a showing that the defendants were aware of plaintiff's serious medical needs and consciously disregarded a substantial risk of serious harm. Salahuddin v. Goord, 467 F.3d at 280.  "[T]he charged official must act with a sufficiently culpable state of mind."  Id. (quoting Wilson v. Seiter, 501 U.S. 294, 300 (1991)).  It is well established that "negligence, even if it constitutes medical malpractice, does not, without more," give rise to a constitutional claim.  Chance v. Armstrong, 143 F.3d at 703.

      1.    Denial of Pain Medication

Plaintiff claims defendants violated his constitutional rights by failing to provide him with the pain medication Ultram during his twenty-two day stay at Woodbourne.  Plaintiff further contends he was not given any medical treatment at all when he was seen by DOCCS medical personnel on January 7, 10, and 21, 2014.  Plaintiff's claims, however, are directly contradicted by the medical records attached to the complaint.  Plaintiff's medical records demonstrate he was seen by DOCCS medical personnel on January 2, 7, 10, 14, 15, and 21. Plaintiff's January 15, 2014 medical record indicates plaintiff was given ibuprofen (Compl. Ex. 4), and his January 21, 2014 medical record states, plaintiff "has Motrin, advised him to continue taking it."  (Id. Ex. 5).  In his opposition brief, plaintiff even admits that on January 2, 2014, he "accepted the offer of 'Motrin'" until his Ultram prescription was renewed (Pl.'s Opp'n at 9), and that on January 15, 17, and 19, he received ibuprofen (Id. at 18).

"If the allegations of a complaint are contradicted by documents made a part thereof . . .

the court need not accept as true the allegations of the complaint." Barnum v. Millbrook Care

Ltd. P'hip, 850 F. Supp. 1227, 1232–33 (S.D.N.Y. 1994); see also Feick v. Fleener, 653 F.2d 69,

75 (2d Cir. 1981) (dismissal proper "[s]ince the documents upon which appellants based their

claim show on their face absence of any grounds for relief"); United States ex rel. Sommer v.

Dixon, 524 F. Supp. 83, 85 (N.D.N.Y. 1981), aff'd per curiam, 709 F.2d 173 (2d Cir. 1983)

(relying on exhibits attached to complaint that contradict plaintiff's allegations in granting

defendants' motion to dismiss).

Here, plaintiff's own papers indicate the Nurse Defendants gave plaintiff Motrin and

ibuprofen for his pain, rather than the narcotic pain medication plaintiff requested, Ultram.

Accordingly, the Court need not accept as true plaintiff's claims in the complaint that he did not

receive any medical treatment for his back pain.

"It is well-established that mere disagreement over the proper treatment does not create a

constitutional claim.  So long as the treatment given is adequate, the fact that a prisoner might

prefer a different treatment does not give rise to an Eighth Amendment violation." Chance v.

Armstrong, 143 F.3d at 698.  Moreover, "[t]he decision to prescribe one form of pain medication

in place of another does not constitute deliberate indifference to a prisoner's serious medical

needs." Rush v. Fischer, 923 F. Supp. 2d 545, 555 (S.D.N.Y. 2013), aff'd sub nom. Rush v.

Canfield, 649 F. App'x 70 (2d Cir. 2016) (summary order); see also Hill v. Curcione, 657 F.3d

116 (2d Cir. 2011) (inmate's claim that he needed stronger pain medication did not state a claim

for deliberate indifference); Harris v. Westchester Cnty. Med. Ctr., 2011 WL 2637429, at * 3

(S.D.N.Y. July 6, 2011) (failure to provide stronger pain medication does not constitute

deliberate indifference).

Moreover, plaintiff has not pleaded any factual allegations tending to show that the decision to provide ibuprofen or Motrin rather than Ultram deviated from reasonable medical treatment of his pain, much less that any of the Nurse Defendants acted with a culpable state of mind in making this treatment decision.  Plaintiff's allegations demonstrate a "mere disagreement over the proper treatment" of his pain, which "does not give rise to an Eighth Amendment violation." Chance v. Armstrong, 143 F.3d at 703; see also Hill v. Curcione, 657 F.3d at 123 ("Issues of medical judgment cannot be the basis of a deliberate indifference claim where evidence of deliberate indifference is lacking.").  The decision to proscribe Motrin and ibuprofen for pain, as part of an overall treatment plan that included use of a cane, walker, or wheelchair, lower bunk, double mattress, wheelchair cushion, physical therapy, and numerous consultations with DOCCS medical personnel, does not give rise to an Eighth Amendment claim.

Finally, plaintiff's submissions show his prescription for Ultram was discontinued in 2013 while he was still at Marcy Correctional Facility ("Marcy") based on an allegedly false misbehavior report that stated plaintiff was "found with med., taking back to dorm, [and] MD will not allow that med. to be renewed due to inmate misuse of med."  (Pl.'s Opp'n at 21; Riley Decl. Ex. I).  The fact that plaintiff may have previously misused his narcotic pain medication only underscores the reasonableness of the Woodbourne medical staff's decision not to give plaintiff Ultram.  See Holleman v. Duckworth, 202 F.3d 273 (table) 1999 WL 1082511 *1 (7th Cir. 1999) ("A prison has a legitimate interest in limiting the use of narcotics by prisoners."); Douglas v. Stanwick, 93 F. Supp. 2d 320, 325 (W.D.N.Y. 2000) (jail physician's decision to withhold narcotic pain medication did not violate inmate's constitutional rights because such

decision was based on the physician's "medical judgment, and her reasonable concern about providing narcotics to jail inmates").[5]

Accordingly, plaintiff's claims against the Nurse Defendants for not providing him with Ultram are dismissed.

2.    Failure to Provide a Neck Brace

Plaintiff also claims the Nurse Defendants refused to provide him with "[m]edical devi[c]es." (Compl. at 3).   Plaintiff's January 2, 2014, medical record indicates he was approved for use of a cane, walker, or wheelchair, lower bunk, double mattress, and wheelchair cushion.  Plaintiff's January 7, 2014, medical record states plaintiff "uses cane[,] had been using wheelchair."  (Id. Ex. 3).  Plaintiff's subsequent medical records show he requested a neck brace on January 10, 2014 and on January 15, 2014.  (Id. Ex. 4).  The medical record dated January 10, 2014, notes plaintiff's request for a neck brace, then states "rod fusion in neck, no longer needed."  (Id.).  Similarly, the January 15, 2014, record notes plaintiff's request for a neck brace permit with an adjacent note stating, "No.  Cervical fusion few yrs ago."  (Id.)

These notes indicate plaintiff's medical providers believed that a neck brace was no longer necessary due to the amount of time that had elapsed since plaintiff's surgery.  Because plaintiff's medical providers exhibited a subjective belief that a neck brace was not medically

---

[5]    To the extent plaintiff seeks to bring a Fourteenth Amendment due process claim in connection with his misbehavior report at Marcy, that claim is dismissed.  To state a due process claim, plaintiff must plausibly allege "(1) that he possessed a liberty interest and (2) that the defendant(s) deprived him of that interest as a result of insufficient process."  Giano v. Selsky, 238 F.3d 223, 225 (2d Cir. 2001).  Prisoners subject to disciplinary proceedings have a liberty interest only when "an institution's disciplinary decision results in an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life.'"  Luna v. Pico, 356 F.3d 481, 487 n.3 (2d Cir. 2004) (quoting Sandin v. Conner, 515 U.S. 472, 484, (1995)).  For the same reasons that it does not constitute deliberate indifference to serious medical needs, being given Motrin and ibuprofen instead of narcotic pain medication can hardly be said to be an atypical and significant hardship that triggers a liberty interest subject to due process protection.

necessary, plaintiff fails to state the subjective element of a deliberate indifference claim—

namely that defendants were aware of a substantial risk of harm.  See Salahuddin v. Goord, 467

F.3d at 280–81 (contemporaneous letter written by defendant doctor to the facility's

superintendent stating his opinion that "from a medical standpoint, there is no urgency for the

cancelled" medical procedure, may have been "an unsound conclusion" but nevertheless

demonstrates defendant was not aware of a substantial risk of harm to plaintiff).  Here, plaintiff's

medical records demonstrate his medical providers' subjective belief that a neck brace was not

medically necessary.  Moreover, plaintiff has failed to allege any other facts tending to show that

the Nurse Defendants were aware of a substantial risk of harm to plaintiff by not providing him

with a neck brace.

Thus, plaintiff's claims against the Nurse Defendants for not providing him with a neck

brace are dismissed.

C.    Equal Protection Claims

Plaintiff alleges defendants deprived him of equal protection under the law when he was

transferred from Woodbourne to Franklin because other inmates with the same medical condition

as plaintiff were not transferred from Woodbourne to other correctional facilities.  Plaintiff

further alleges he was denied "pain medication and medical care provided to other inmates at

Woodbourne [] with like or similar conditions as Plaintiff."  (Pl.'s Opp'n at 11).

Although "the Equal Protection Clause is most commonly used to bring claims alleging

discrimination based on membership in a protected class," a plaintiff who does not allege

membership in a protected class may, nonetheless, bring a "class of one" equal protection claim.

Neilson v. D'Angelis, 409 F.3d 100, 104 (2d Cir. 2005), overruled on other grounds by Appel v.

Spiridon, 531 F.3d 138 (2d Cir. 2008).  Here, plaintiff does not allege differential treatment

based on his membership in a protected class, such as race or religion.  Accordingly, the Court considers whether plaintiff has stated a class-of-one equal protection claim.

"A class-of-one claim exists 'where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'"  Analytical Diagnostic Labs, Inc. v. Kusel, 626 F.3d 135, 140 (2d Cir. 2010) (quoting Vill. of Willowbrook v. Olech, 528 U.S. 562, 564, (2000)).  To state a claim, plaintiff must identify at least one individual with whom he can be compared.  King v. N.Y. State Div. of Parole, 260 Fed. App'x 375, 380 (2d Cir. 2008) (summary order) (affirming dismissal of claim because plaintiff "failed to identify a single individual with whom he can be compared for Equal Protection purposes").  "Class-of-one plaintiffs must show 'an extremely high degree of similarity between themselves and the persons to whom they compare themselves.'"  Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d 55, 59 (2d Cir. 2010) (quoting Clubside, Inc. v. Valentin, 468 F.3d 144, 159 (2d Cir. 2006)).  "Because of the particular posture of a 'class of one' claim, the comparator's circumstances must be 'prima facie identical.'"  Mosdos Chofetz Chaim, Inc. v. Village of Wesley Hills, 815 F. Supp. 2d 679, 693 (S.D.N.Y. 2011) (quoting Neilson v. D'Angelis, 409 F.3d 100, 105 (2d Cir. 2005)).  The comparison to similarly situated individuals should "provide an inference that the plaintiff was intentionally singled out for reasons that so lack any reasonable nexus with a legitimate government policy that an improper purpose—whether personal or otherwise—is all but certain." Neilson, 409 F.3d at 105.  "It is well established that this pleading standard is demanding." Hampshire Recreation, LLC v. Village of Mamaroneck, 2016 WL 1181727, at *6 (S.D.N.Y. Mar. 25, 2016) (internal quotation marks omitted).

Furthermore, in the prison context, a plaintiff asserting an equal protection claim "must demonstrate that his treatment was not 'reasonably related to [any] legitimate penological interests.'" Phillips v. Girdich, 408 F.3d 124, 129 (2d Cir. 2005) (quoting Shaw v. Murphy, 532 U.S. 223, 225 (2001)).

The medical records attached to the complaint demonstrate that plaintiff's transfer to Franklin was reasonably related to legitimate penological interests.  Woodbourne medical personnel noted plaintiff was "unsuitable for [Woodbourne] placement" and initiated his transfer to a "flat facility."  (Compl. Ex. 3).  Plaintiff himself describes the difficulty he experienced at Woodbourne "painfully push[ing] himself around" the facility and his need for assistance from other inmates in order to attend some programs and meals.  (Pl.'s Opp'n at 5).  Accordingly, plaintiff's transfer to Franklin cannot be said to not be reasonably related to legitimate penological interests or to otherwise lack a rational basis.

Plaintiff's claim that he was denied medical care that was provided to other similarly situated inmates also fails to state a viable equal protection claim.  First, plaintiff fails to allege facts that demonstrate a substantial similarity between himself and the other inmates with whom he compares himself.  The complaint merely states plaintiff was not given the medication Ultram while Ultram was provided to other inmates with the same medical condition.  However, this conclusory allegation fails to show "an extremely high degree of similarity between [plaintiff] and the persons to whom" he compares himself.  See Ruston v. Town Bd. for Town of Skaneateles, 610 F.3d at 59 (quoting Clubside, Inc. v. Valentin, 468 F.3d at 159).  Furthermore, plaintiff's medical records show he was not given Ultram because it had been discontinued, and was instead given Motrin and ibuprofen for his pain.  It is hardly irrational for prison medical personnel prescribing and dispensing medication to provide a substitute medication in place of

another that has been discontinued.  Finally, as discussed above, "prison[s] ha[ve] a legitimate

interest in limiting the use of narcotics by prisoners."  <u>Holleman v. Duckworth</u>, 1999 WL

1082511 at *1.

III.    <u>Leave to Amend</u>

A district court ordinarily should not dismiss a <u>pro</u> <u>se</u> complaint for failure to state a

claim "without granting leave to amend at least once when a liberal reading of the complaint

gives any indication that a valid claim might be stated."  <u>Cuoco v. Moritsugu</u>, 222 F.3d 99, 112

(2d Cir. 2000) (quoting <u>Gomez v. USAA Fed. Sav. Bank</u>, 171 F.3d 794, 795 (2d Cir. 1999)).  A

court must grant leave to amend "unless the court can rule out any possibility, however unlikely

it might be, that an amended complaint would succeed in stating a claim."  <u>Gomez v. USAA Fed.</u>

<u>Sav. Bank</u>, 171 F.3d 794, 796 (2d Cir. 1999).

Here, the complaint, even liberally construed, does not contain allegations suggesting

plaintiff has valid deliberate indifference or equal protection claims, or any other claim, that he

has merely "inadequately or inartfully pleaded" and therefore should "be given a chance to

reframe."  <u>Cuoco v. Moritsugu</u>, 222 F.3d at 112.  On the contrary, the Court finds that repleading

would be futile because the problems with plaintiff's claims are substantive, and supplementary

or improved pleading will not cure the deficiencies of the complaint.  <u>See</u> <u>id</u>.

Accordingly, the Court declines to grant plaintiff leave to amend.

17

**CONCLUSION**

The motion to dismiss is GRANTED.

The Clerk is instructed to terminate the motion (Doc. #18) and close this case.

The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order

would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose

of an appeal.  See Coppedge v. United States, 369 U.S. 438, 444–45 (1962).

Dated:  February 28, 2017
        White Plains, NY

                         SO ORDERED:


                         _____
                         Vincent L. Briccetti
                         United States District Judge